UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

| | |
|---|---|
| MICHAEL LOVELL, ROBERT HUFF, and HAROLD MURPHY, *on behalf of themselves and all others similarly situated,* | Case No: 4:20-CV-59-JHM |
| Plaintiffs, | CLASS ACTION COMPLAINT |
| v. | |
| BLUEGRASS BIOEXTRACTS, LLC, | |
| DTEC VENTURES, LLC, | |
| OMNY MANAGEMENT, LLC, | |
| DR. GERALD G. EDDS, and | |
| BRUCE PETERS, | |
| Defendants. | |

## **COMPLAINT**

1.      Plaintiffs Michael Lovell, Robert Huff, and Harold Murphy (Plaintiffs),

individually and as the representatives of a class of growers of industrial hemp floral material

who entered into a processing agreement with Bluegrass BioExtracts for the 2019 crop year,

bring this lawsuit against Defendants Bluegrass BioExtracts, LLC, DTEC Ventures, LLC, Omny

Management, LLC, Dr. Gerald G. Edds, and Bruce Peters for breach of contract, negligent

misrepresentation, and fraud.

2.      This is a class action brought pursuant to Kentucky Rule of Civil Procedure 23.01

et seq by growers of industrial hemp floral material who entered into processing agreements with

Bluegrass Bioextracts for the 2019 crop year against Bluegrass Bioextracts, LLC, DTEC

Ventures, LLC, Omny Management, LLC, Dr. Gerald G. Edds and Bruce Peters. Under the

processing agreements, Defendants owed certain contractual duties to the Plaintiffs and the

Class. The Defendants breached these duties in numerous ways, to the detriment of Plaintiffs and the Class. Further, the Defendants made multiple negligent and fraudulent misrepresentations to the Plaintiffs and the Class, which the Plaintiffs and the Class relied on to their detriment.

3.     Prior to entering into processing agreements with the Plaintiffs and the Class for the 2019 crop year, Defendant Bluegrass BioExtracts entered into a management agreement with Defendant Omny Management, LLC, run by Joseph W. Gomez and Nathan D. Yates. Under the terms of this agreement Defendant Omny Management provided Defendant Bluegrass BioExtracts with significant assistance in the management of Bluegrass BioExtracts, including selling, pricing, distributing, and marketing Bluegrass BioExtracts' products.

4.     Defendants entered into hemp processing and purchasing contracts with the Plaintiffs and the Class for the 2019 crop year.

5.     The hemp processing and purchasing contracts varied in their level of complexity. Some of the contracts were in the form of an Industrial Hemp Processing and Purchase Agreement.

6.     The Industrial Hemp Processing and Purchase Agreement provided that the industrial hemp floral material "must have a THC level less than 0.3 percent and CB level a a minimum of 4 percent" and all other testing results "must comply with Kentucky Department of Agriculture requirements for Industrial Hemp Floral Material." This included being free of "mold, herbicides, pesticides, heavy metals or other contents prohibited by the Kentucky Department of Agriculture."

7.     Under the terms of the Industrial Hemp Processing and Purchase Agreement, the industrial hemp floral material had to be delivered to Bluegrass BioExtracts stripped without stalks, branches or large stems in super sacks or seedbags with handling loops or in gaylords.

The materials had to be pre-dried by the grower with a moisture level of less than 50 percent and could not be previously ground.

8.     The Grower had to provide a copy of their state license to grow Industrial Hemp in 2019 prior to delivery of the Industrial Hemp Floral Material.

9.     Upon delivery, Bluegrass BioExtracts would be tested for CBD percentage and THC level to determine the CBD percentage used to calculate payment.

10.    Bluegrass BioExtracts agreed to "purchase the Industrial Hemp Floral Material, meeting the criteria described above" from the Plaintiff and Class Members.

11.    Some Industrial Hemp Processing and Purchase Agreements operated under a point system where Bluegrass BioExtracts promised to pay "FOUR DOLLARS ($4.00) per CBD percentage point per pound of Industrial Hemp Floral Material based upon testing of this material following drying to 10-12 percent moisture level and preparation by hammermill." According to the terms of the Industrial Hemp Processing and Purchase Agreement, "Full payment will be made to the grower immediately when the extracted oil is sold and the funds are received." These contracts are the Points Contracts.

12.    Other Industrial Hemp Processing and Purchase Agreements operated under a "Toll Processing Agreement" where "after processing this material to full spectrum CBD oil, the oil is split evenly (50%-50%) between the PROCESSOR and the GROWER. The GROWER may take possession of his half of this full spectrum CBD oil or request the PROCESSOR to attempt selling this material through a Broker for the GROWER." The Agreement went on to state, "While the Toll Process Model is potentially more financially attractive to the GROWER, the GROWER assumes the ultimate responsibility for the sale or disposal of his/her full spectrum CBD oil." These contracts are the Toll Processing Contracts.

13.     The Industrial Hemp Processing and Purchase Agreements further required that the Growers call Bluegrass BioExtracts to schedule specific delivery dates and times for delivery of their Industrial Hemp Floral Material.

14.     Other agreements were much less specific and simply set out that Bluegrass BioExtracts agreed to buy a specific number of pounds from the 2019 crop if it was "driet to 10-12% and with a CBD level of at least 4% and a THC level no more than 0.3%." "Bluegrass BioExtracts (buyer) agrees to pay seller $4.00 per CBD percentage per pound for the industrial hemp flower material as described above."

15.     In the case of Plaintiff Michael Lovell, this contract further specified the time of payment: "Payment in full will be made to seller on or before February 15, 2020."

16.     In the course of negotiating these contracts, Defendants Bruce Peters and Gerald Edds used text messages from their personal phones, sent emails from their personal email accounts, and held meetings at their homes. They did not utilize a business email account, a business email signature, or hold meetings at their place of business.

17.     During these negotiations, Defendants Bruce Peters and Gerald Edwards emphasized the benefit and value of THC free processing that would occur as part of processing with Bluegrass BioExtracts, specifically representing that while the CBD market generally was going down in value, THC free products were not and would not go down in value.

18.     During negotiations, Defendants Bruce Peters and Gerald Edds represented that Bluegrass BioExtracts already had the ability to produce THC free products and that they were merely expanding this ability by obtaining one of the two largest chromatography setups in the country.

19.     During negotiations, Defendants Bruce Peters and Gerald Edds affirmed that they would honor the price set out in Points Contracts regardless of what was occurring in the market because they wanted to develop long-term relationships and good will with growers.

20.     Defendants Bruce Peters and Gerald Edds emphasized that growers could make more money under a Toll Processing Contract than under a Points Contract.

21.     Based upon these representations, Plaintiff Michael Lovell entered into a Toll Processing Contract for part of the hemp that he contracted for processing with Bluegrass BioExtracts.

22.     Defendants Bruce Peters and Gerald Edds also represented to growers during and after negotiations that they would be paid by no later than February 2020.

23.     On or about January 7, 2020, Nathan Yates on behalf of Omny Management and Bluegrass BioExtracts stated that the levels for pesticides and heavy metals were based on limits in Colorado and California.

24.     In this same conversation, Nathan Yates admitted that the limits for Colorado and California were "low" and that they were using these standards.

25.     This is in contradiction to the terms of the contract which provided that these limits would be set in accordance with Kentucky law, regulations, and guidelines.

26.     After the Plaintiffs entered into processing agreements with Bluegrass BioExtracts, Defendants made multiple representations that they would be able to comply with the terms of the contracts and purchase all compliant industrial hemp floral material.

27.     On February 19, 2019, Defendant Bruce Peters, Gerald Edds, Bluegrass BioExtracts and/or Omny Management sent out an "Important Update!!" from the personal email account of Gerald Edds informing the Plaintiffs and the Class that among other things:

A.     "We will be up front and honest with our grower-partners.";

B.      "We want the net income earned per acre by our growers to be competitive with, if not greater than other processors.";

C.      "We will comply with the terms of any agreement we enter into with our grower-partners.";

D.      "We intend to pay our growers as promised. In fact, outside of overhead expenses, debt service and taxes, owners of BBE will not take money out of the business until ALL growers have been paid in full."

E.      "We believe the odds are excellent that we can get everyone paid by Feb. 15, but it could be somewhat later. We promise to make every effort humanly possible to meet that date, or even pay our growers earlier, but because the equipment manufacturer is unwilling to give us a guaranteed delivery date, we feel forced to alter the Feb. 15 date from any agreement we execute with growers."

F.      "Bluegrass BioExtracts is founded in the principles of honesty, integrity, and quality."

28.    On March 29, 2019, Defendants Bruce Peters, Gerald Edds, Bluegrass BioExtracts, and/or Omny Management sent out yet another update from the personal email account of Gerald Edds informing Plaintiffs and the Class that among other things:

A.      "We have set a realistic limit on the number of pounds we can extract for this year, and when that number is reached we will not be able to accept more agreements. While this number may increase with the installation of additional processing equipment, we will not over commit and be unable to process as agreed."

B.      "We are now extracting and are very happy with the full spectrum oil being produced. Luckily, we have more orders for oil than we can produce and plan to double our smaller extraction line in the next several weeks."

29.     On June 18, 2019, Defendants Bruce Peters, Gerald Edds, Bluegrass BioExtracts and/or Omny Management sent out "Important Updates" once again from the personal email account of Gerald Edds informing the Plaintiffs and the Class that among other things:

A.      "As a grower, you should know that Bluegrass BioExtracts is investing significant amounts of money and time to meet these challenges. First, it is obvious to us that to be successful, we have to have the capability of producing very low and non-detect THC CBD products. To achieve that we are installing four large industrial scale chromatography units to reduce THC. These units are extremely expensive, but we feel it is important to have the ability to create the most valuable and marketable products. We expect all four units to be operating this year. Secondly, we have retained consultants with vast experience in c-GMP certification and will be working to achieve that as soon as possible."

B.      "Many of you have heard stories about growers not being paid by some of the processors in Kentucky. One of the largest processors in this state for example has a terrible reputation for its dealings with its growers. For Bluegrass BioExtracts to reach our goals, we feel it is important that our growers feel that we are on their side and looking out for their best interests. If our growers are successful, we know we will be successful, and that will enable us to meet our goal of doubling our production for the 2020 crop."

C.      "While there are no guarantees, we believe the demand for this product will not decrease. We also believe that our chromatography setup will make our products among the most valuable and marketable in the country."

D.     "We notified our growers recently that we have reached our maximum capacity for the 2019 crop and are not accepting <u>new</u> agreements. To be clear, if we have been working with you and have agreed to process your hemp we will do so."

30.     Defendants Bruce Peters, Gerald Edds, and/or Bluegrass BioExtracts represented to growers that they would use the chromatography units to make THC free hemp products, such as isolate, distillate or crude oil. These THC free products are the most valuable in the hemp industry.

31.     Defendants Bruce Peters, Gerald Edds, and/or Bluegrass BioExtracts represented to growers that they would process their crops into THC free products, conferring a significant return upon the growers.

32.     Defendants Bruce Peters, Gerald Edds, and/or Bluegrass BioExtracts continued to represent to growers that they already had the ability to process their crops into THC free products.

33.     In fact, the Defendants were never set up to process industrial hemp floral material into THC free products.

34.     The ability to make THC free hemp products was heavily touted by Defendants Bruce Peters, Gerald Edds, and/or Bluegrass BioExtracts during negotiations to get contracts with growers.

35.     On January 7, 2020, Nathan Yates stated that the statements made to growers about the chromatography units were irresponsible because it was never even a possibility at that point in time.

36.     At this time, unbeknownst to the Plaintiffs and the Growers, Defendants Bruce Peters, Gerald Edds, Bluegrass BioExtracts and/or Omny Management were in negotiations with Defendant DTEC Ventures concerning the sale of Bluegrass BioExtracts.

37.     On September 5, 2019, Defendants Gerald Edds, Bruce Peters, Bluegrass BioExtracts and/or Omny Management sent out an update once again from the personal email account of Gerald Edds regarding the testing of hemp. In this update, Defendants made multiple representations, including the following:

A.     "Bluegrass BioExtract is on schedule to have our plant operational by October, and we are preparing to receive a large volume of biomass."

38.     In September 2019, Defendant Bruce Peters expressly represented that Bluegrass BioExtracts would honor the contract price set forth in Points Contracts, even though the market was now substantially below $4.00 per point.

39.     Plaintiff Robert Huff reached out to Defendant Bruce Peters several times in September and October 2019 regarding whether the Points Contract price would be honored.

40.     At this time, Plaintiff Robert Huff had several opportunities to sell his hemp at $2.00 per CBD percentage point.

41.     Based upon Defendant Bruce Peters repeated and adamant reassurances that Bluegrass BioExtracts would take delivery of and pay for the hemp biomass at the price set out in the Points Contract, Plaintiff Robert Huff did not act on any of the opportunities to sell his hemp at $2.00 per CBD percentage point.

42.     Between September 30, 2019 and October 2, 2019, Defendant Gerald Edds expressly represented that THC free processing was the standard at Bluegrass BioExtracts and would be provided to growers at no additional cost.

43.     On October 1, 2019, Linda Zuerner sent an email on behalf of Bluegrass BioExtracts. In this email, Bluegrass BioExtracts for the first time informed growers that they would not be processing hemp biomass as set out in the individual contracts and in prior communications:

Please be advised, BBE will process bio-mass based on the best financial outcome for all parties. Typically this will be based on market value of CBD%. Therefore, if you have product with a range of CBD%, not all of your product may be processed at the same time.

44.     The statement that the processing would be based on the best financial outcome for all parties was false. Growers who had contracted under a points agreement were to receive $4 per point of CBD regardless of what the market price was pursuant to their contracts. Further, for growers who were operating under a toll processing agreement, the sale of their produce by Bluegrass BioExtracts was not a part of the original contract. Instead the growers had the ability and right to pursue sale through another broker or means.

45.     On October 25, 2019, Defendants Gerald Edds, Bluegrass BioExtracts and/or Omny Management sent out an email titled "IMPORTANT UPDATE FOR OUR GROWERS." In this email, Defendants made multiple representations including the following:

A.     "To survive, Bluegrass BioExtracts has been faced with some difficult decisions. It became obvious we had to retain a management group with a national sales force. Only by dealing with large volumes of sales can a business like ours survive. We have signed a management agreement with two very knowledgeable managers. Nathan Yates has both a law degree and a MBA degree from Vanderbilt and will lead the management team. Joe Gomez will also be in management and brings impressive experience in the hemp business."

B.     "In addition, we have been offered a buyout of the business. The buyers are a large investment firm from California and are interested in combining Bluegrass BioExtracts with a minimum of two other similar plants to gain economy of scale and operations. They have accepted our demand that all contracts we currently have with our growers will be honored as written."

C.     "To reiterate if you currently have a contract with us it will be honored."

46.     Contrary to these representations, Joseph Gomez and Nathan Yates of Omny Management, LLC had been involved in the management of Bluegrass BioExtracts since at least January 2019.

47.     Following this announcement, Defendant Bruce Peters continued to represent that the prices set out in Points Contracts would be honored.

48.     Before they would accept delivery of hemp biomass, Bluegrass BioExtracts required sellers to inform them whether the crop was subject to a toll processing contract or a point contract.

49.     For example, Linda Zuerner sent multiple emails requiring this information:

[November 1, 2019:] Please, advise which shipments are TOLL and which are Points. We need to know before delivery, please.

[November 7, 2019:] Please, send me a list of which shipments are tolling or points, thanks.

50.     Growers whose hemp biomass was under a Points Contract were not permitted to deliver their crops to Bluegrass BioExtracts.

51.     Only growers whose hemp biomass was subject to a Toll Processing Contract were permitted to deliver their crops.

52.     In November 2019, Defendant Gerald Edds expressly represented that contracts would be honored and that it might be possible to get payment in December 2019.

53.     On or around November 14, 2019, Gerald Edds, Bruce Peters, David Eggers, Rebecca Eggers, Rick Hobgood, Julie Hobgood, Eric Edds, Abby Edds, Adam Becker, Elizabeth Becker, William Harrison, Nancy Harrison, Ed Sheriff, Cindy Sheriff, Steve Fulkerson, Janella Fulkerson, Jerry Maggard, Linda Maggard, Charles Mann Jr., and Bobbi Mann entered into a Purchase Agreement with DTEC Ventures and transferred their ownership interests in Bluegrass BioExtracts to DTEC Ventures.

54.     Part of the marketability and value of Bluegrass BioExtracts was its existing processing agreements for the 2019 crop year with its growers.

55.     Under the terms of this Purchase Agreement, DTEC Ventures agreed to honor the contractual obligations owed to farmers who had entered into Industrial Hemp Processing and Purchase Agreements and Toll Processing Agreements for the 2019 crop year with Bluegrass BioExtracts.

56.     In November or December 2019, Tom Ashlock, an employee of Bluegrass BioExtracts, stated that Bluegrass BioExtracts would not honor Points Contracts due to the current state of the market.

57.     On December 11, 2019, Nathan Yates on behalf of Bluegrass BioExtracts, DTEC Ventures and/or Omny Management informed Plaintiff Michael Lovell that Defendants would not be honoring Points Contracts as they would cost the Defendants money.

58.     On December 20, 2019, Bluegrass BioExtracts sent out an email signed by Nathan Yates stating that "all extraction facilities in the state of KY have recently been placed under a different, stricter, regulatory framework by multiple state and federal regulatory agencies."

59.     The email went on to state, "Based on this information it is necessary for us to temporarily stop accepting deliveries or processing hemp until we can ensure that we are 100% compliant under these new rules and regulations."

60.     On December 23, 2019, Kim Sullivan, the Industrial Hemp Program Specialist for the Kentucky Department of Agriculture, stated that the "regulations have not taken affect."

61.     In January 2020, Gerald Edds continued to make contact with growers under contract with Bluegrass BioExtracts.

62.     In telephonic and text conversations, Gerald Edds suggested that growers should contact specific attorneys.

63.     In an email sent out on January 27, 2020, Gerald Edds once again stated, "Our contract with DTEC specifically required them to honor all contracts with our growers." Gerald Edds went on to state that Bruce Peters and he intended to "correct any damage that has been done and move to get back accepting hemp and extracting under a new corporation with a new name. We will keep you posted on any changes to the ownership situation."

64.     In an email sent out on February 26, 2020, Gerald Edds stated that he and Bruce Peters were "currently in the process of taking back the equipment and trying to restart a business, Precision Biotech, LLC ("Precision.")

65.     At all times, Gerald Edds and Bruce Peters failed to respect formalities of the corporation. As set forth above, they only made communications through their personal email and cell phone accounts. They primarily conducted business meetings at their homes. Bluegrass BioExtracts was effectively an alter ego of Gerald Edds and Bruce Peters. The pair are currently in the process of restarting the same business with the same equipment and potentially the same customers with merely the name changed.

66.     On January 7, 2020, Nathan Yates and/or Omny Management stated that Bluegrass BioExtracts and/or DTEC Ventures would re-test samples that they claimed had not met the criteria set out in the Industrial Hemp Processing and Purchase Agreements due to the presence of heavy metals.

67.     During this same conversation, Nathan Yates admitted that the testing occurred based on samples that had been run through a conveyor belt and equipment at Bluegrass BioExtracts. Nathan Yates admitted that this could adulterate and contaminate the samples.

68.     On this same date, Nathan Yates further stated that Bluegrass BioExtracts was unable to sell any more product until they obtained required permits and became compliant with EPA standards.

69.     Nathan Yates admitted that it was never even a possibility for Bluegrass BioExtracts and/or DTEC Ventures to honor the 2019 grow year contracts.

70.     In January 2020, Gerald Edds stated that he had been told multiple times by Omny Management and Nathan Yates that Bluegrass BioExtracts and/or DTEC Ventures would be much better off to not get their hemp locally and to instead by it on the open market.

71.     Contrary to representations and the terms of the signed contract, the Defendants did not purchase the industrial hemp floral material that met the criteria described in the contract.

72.     In some instances, Defendants refused to purchase industrial hemp floral material claiming that it had tested positive for heavy metals or pesticides.

73.     However, re-testing or independent testing of the industrial hemp floral material showed that heavy metals or pesticides were either not present or within accepted limits.

74.     In some instances, Plaintiffs delivered their hemp biomass to the Defendants, but Defendants failed to process the hemp biomass, despite the terms of the contract.

75.     In some instances, Plaintiffs were scheduled to deliver their hemp biomass to the Defendants, but the delivery was cancelled or otherwise indefinitely delayed due to the actions and/or choices of the Defendants, despite the terms of the contract.

76.     As a direct result of this breach, the Plaintiffs have suffered a loss in revenue and value in the processing and sale of their hemp biomass, have been unable to sell their hemp biomass, or have suffered significant delays in selling their hemp biomass costing Plaintiffs and the Class millions of dollars in lost profits.

77.     Further, despite beginning to look for a potential purchaser for Bluegrass BioExtracts in June 2019 due to concerns about the financial sustainability of the company, Defendants affirmatively or negligently represented to the Plaintiffs and Class that the 2019 Points Contracts and Toll Processing Contracts would be honored.

78.     As a direct result of these misrepresentations, the Plaintiffs and Class continued to rely on the 2019 agreements with Bluegrass BioExtracts instead of obtaining a different buyer for their hemp. When the contracts were not honored, Plaintiffs and the Class have suffered a loss in revenue and value in the processing and sale of their hemp biomass, have been unable to sell their hemp biomass, or have suffered significant delays in selling their hemp biomass.

79.     As a result of the substantial damages they suffered, Plaintiffs, individually and as the representatives of a class of growers, bring this action in order to recover these damages from Defendants.

80.     Plaintiffs bring this suit as a Class Action pursuant to Rule 23 of the Kentucky Rules of Civil Procedure on behalf of a Class consisting of:

> All growers of industrial hemp floral material, harvested from acreage ranging from 2 to 500 acres licensed by the Kentucky Department of Agriculture for the 2019 crop year, who entered into an processing agreement in the form of a Points Contract or Toll Processing Contract with Bluegrass BioExtracts for the 2019 crop year and whose hemp's CBD cannabinoid percentages were 4% or higher but was not processed, purchased and/or sold as set forth in their contract with Bluegrass BioExtracts. These growers include growers whose hemp biomass was delivered to Bluegrass BioExtracts that Bluegrass BioExtracts chose to not process despite the terms of the contract, growers whose hemp biomass was scheduled to be delivered to Bluegrass BioExtracts but was never delivered due to the actions of Bluegrass BioExtracts, growers who could not get a scheduled delivery date for their hemp biomass due to the actions of Bluegrass BioExtracts, and growers whose hemp biomass was wrongfully rejected under false claims that the hemp biomass contained high traces of heavy metals and/or pesticides.

81.     The proposed class is sufficiently numerous, as hundreds of members of the class grew industrial floral hemp in accordance with their contracts with Bluegrass BioExtracts only to have their contracts not be honored due to false claims that the hemp contained heavy metals

and/or pesticides, choices by the Defendants not to schedule or accept delivery of the hemp

biomass, or choices by the Defendant not to process delivered hemp biomass in accordance with

the contract. These Class Members relied on Defendants representation that their contracts would

be honored by Bluegrass BioExtracts and that the company was financially able to honor these

contracts. The Class Members are so numerous that joinder of all members is impracticable. The

Class is composed of hundreds of members and the disposition of their claims in a Class Action

will benefit the parties and the Court. The Class Members can be identified by, *inter alia*, records

maintained by the Defendants.

82.     Common questions of law and fact exist as to all members of the Class and

predominate over any questions affecting solely individual members of the Class. Among the

questions of law and fact common to the Class Members are:

A.      Whether Defendants misrepresented to growers that Bluegrass BioExtracts

was financially capable of honoring the 2019 processing agreements;

B.      Whether Defendants misrepresented their ability to process hemp biomass

into THC free products;

C.      Whether Defendants affirmatively delayed the delivery of hemp biomass

despite the terms of the 2019 processing agreements;

D.      Whether Defendants refused to schedule or delayed delivery or hemp

biomass that was subject to a Points Contract;

E.      Whether Defendants refused to process hemp biomass despite the terms of

the 2019 processing agreements;

F.      Whether Defendants misrepresented the testing results of hemp biomass to

falsely claim that they contained unacceptably high traces of metals and/or pesticides;

G.      Whether Defendants misrepresented to growers that the 2019 processing agreements would be honored;

H.      Whether Defendants breached the 2019 processing agreements; and

I.      Whether Defendants failed to pay the Plaintiffs and Class Members in accordance with the terms set forth in the 2019 processing agreements.

## JURISDICTION AND VENUE

83.     This action is brought by Grower Plaintiffs Michael Lovell, Robert Huff, and Harold Murphy to recover damages resulting from their suffered loss in revenue and value in the processing and sale of their hemp biomass, inability to sell their hemp biomass, or the significant delays in selling their hemp biomass, prejudgment interest, and to obtain an award of attorneys' fees.

84.     This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. §1331 and 18 U.S.C. §1964(c). The Court also has supplemental jurisdiction over Plaintiff's state and common-law claims under 28 U.S.C. §1367.

85.     This Court has personal jurisdiction over each Defendant because each Defendant has conducted business in the Commonwealth of Kentucky, each Defendant purposefully availed themselves of the privilege of exploiting forum-based opportunities, and the exercise of personal jurisdiction is consistent with Kentucky law. This Court also has personal jurisdiction over Defendants under 18 U.S.C. §1964(c).

86.     This Court is the proper venue for this action under 28 U.S.C. §1391 because a substantial part of the events or omissions giving rise to the claims asserted herein arose in this District and Defendants are subject to personal jurisdiction in this District.

## **PARTIES**

87.    Plaintiff Michael Lovell, at all time relevant herein, was a resident of Kentucky, an owner of acreage licensed by the Kentucky Department of Agriculture for industrial hemp floral material for the 2019 crop year, and a party who contracted with Bluegrass BioExtracts for the purchase of his industrial hemp floral material under both Points Contracts and Toll Processing Contracts.

88.    Plaintiff Robert Huff, at all time relevant herein, was a resident of Kentucky, an owner of acreage licensed by the Kentucky Department of Agriculture for industrial hemp floral material for the 2019 crop year, and a party who contracted with Bluegrass BioExtracts for the purchase of his industrial hemp floral material under a Points Contract.

89.    Plaintiff Harold Murphy, at all time relevant herein, was a resident of Kentucky, an owner of acreage licensed by the Kentucky Department of Agriculture for industrial hemp floral material for the 2019 crop year, and a party who contracted with Bluegrass BioExtracts for the purchase of his industrial hemp floral material.

90.    Defendant Bluegrass BioExtracts, LLC is a limited liability company organized under the laws of Kentucky with is principal place of business at 931-A Wing Avenue, Owensboro, Kentucky 42303.

91.    Defendant DTEC Ventures, LLC is a limited liability company organized under the laws of Nevada and has its principal place of business at 401 Ryland Street, Suite 200-A, Reno, Nevada 89502.

92.    Upon information and belief, Defendant Omny Management, LLC, is a company that is not registered to do business in Kentucky. It is run by Joseph W. Gomez and Nathan D. Yates.

93.     Defendant Dr. Gerald G. Edds is an individual who resides in Daviess County, Kentucky and is the co-founder of Bluegrass BioExtracts. He was involved in the management and sale of Bluegrass BioExtracts at all relevant times. As set out in detail above, Dr. Edds was directly involved in the negotiations of contracts with growers and made multiple representations to them regarding processing, including the availability of chromatography equipment, and what type of contracts were in their best interest. These communications often originated from his personal email account at roadrunner.com.

94.     Defendant Bruce Peters is an individual who resides in Daviess County, Kentucky and is the co-founder of Bluegrass BioExtracts. He was involved in the management and sale of Bluegrass BioExtracts at all relevant times. Mr. Peters was directly involved in the negotiations of contracts with growers and made multiple representations to them regarding processing, including the availability of chromatography equipment, and what type of contracts were in their best interest. These communications often originated from Gerald Edds' personal email account at roadrunner.com.

## FIRST CLAIM FOR RELIEF

### Breach of Contract

95.     Plaintiffs repeat and reallege each of the preceding paragraphs, as if fully set forth herein.

96.     The Plaintiffs entered into an Industrial Hemp Processing and Purchase Agreement or Toll Processing Agreement with Defendant Bluegrass BioExtracts for the sale of their qualifying industrial hemp floral material from the 2019 crop year.

97.     These Industrial Hemp Processing and Purchase Agreements and Toll Processing Agreements were covered by a Purchase Agreement entered into between Defendants Bluegrass

BioExtracts, DTEC Ventures, Dr. Gerald Edds and/or Bruce Peters upon the advice of Defendant Omny Management.

98.     Defendants Bluegrass BioExtracts, DTEC Ventures, Dr. Gerald Edds and/or Bruce Peters are in default under the terms of the respective Industrial Hemp Processing and Purchase Agreement, Toll Processing Agreement, and/or Purchase Agreement as a result of their failure to honor their covenants under the agreements, which include, but are not limited to, honoring the contractual obligations to purchase and process qualifying industrial hemp floral material owed to the farmers who entered into these contracts.

99.     Although Defendants claim that some of the industrial hemp floral material was not acceptable due to traces of pesticides and/or heavy metals, independent testing has shown that the industrial hemp floral material did not contain levels of pesticide and/or heavy metals that were unacceptable under the terms of the respective Industrial Hemp Processing and Purchase Agreements or Toll Processing Agreements.

100.    Plaintiffs and the Class have suffered damages in the form of a loss in revenue and value in the processing and sale of their hemp biomass, have been unable to sell their hemp biomass, or have suffered significant delays in selling their hemp biomass as a result of the breach of contract described above, and are therefore entitled to compensatory and consequential damages from Defendants, as well as attorneys' fees, costs, expenses, and all other relief as may be appropriate.

## SECOND CLAIM FOR RELIEF

### Fraud

101.    Plaintiffs repeat and reallege each of the preceding paragraphs, as if fully set forth herein.

102.    Defendants knowingly made false representations or omissions of material fact to Plaintiffs and Class Members that the Industrial Hemp Processing and Purchase Agreements or Toll Processing Agreements for the 2019 grow year would be honored.

103.    As set forth in detail above, Defendants knowingly made false representations or omissions of material fact to Plaintiffs and Class Members that four industrial scale chromatography units to reduce THC and achieve THC free products would be operational for processing the 2019 grow year industrial hemp floral materials.

104.    Defendants Gerald Edds, Bruce Peters, Omny Management, and/or Bluegrass BioExtracts specifically represented that their "chromatography setup will make our products among the most valuable and marketable in the country."

105.    At all relevant times, Defendants Gerald Edds, Bruce Peters, Omny Management, and/or Bluegrass BioExtracts were aware that they did not have a single industrial scale chromatography unit that was operational, much less four.

106.    Defendants Gerald Edds, Bruce Peters, Omny Management, and/or Bluegrass BioExtracts specifically attempted to get growers to change from a payment model agreement wherein the grower received a cash payment to a toll model where the grower split the CBD product with the Defendants. Defendants represented that the profit margin for the grower was much higher with the toll model than with the payment model.

107.    Defendants touted their chromatography setup and how it would increase the value and marketability of their CBD products as a reason for growers to switch from payment model to the toll processing agreement.

108.    Defendants knowingly made false representations or omissions of material fact to Plaintiffs and Class Members that industrial hemp floral material was being rejected due to unacceptably high levels of pesticides and/or heavy metals.

109.    These representations or omissions of material fact were false.

110.    The Defendants intended for Plaintiffs and Class Members to rely on these false representations or omissions of material fact and continue to act in accordance with their Industrial Hemp Processing and Purchase Agreements or Toll Processing Agreements with Bluegrass BioExtracts.

111.    Plaintiffs and Class Members did in fact rely on these representations or omissions to their detriment by continuing to act in conformance with their Industrial Hemp Processing and Purchase Agreements or Toll Processing Agreements with Bluegrass BioExtracts and/or by failing to obtain a different buyer for their industrial hemp floral material.

112.    Plaintiffs and Class Members were injured as a result of the Defendants' fraudulent representations or omissions, and are entitled to compensatory damages, exemplary and /or punitive damages, to the extent allowable at law, costs and attorney's fees, as well as any other damages or relief allowable at law.

### THIRD CLAIM FOR RELIEF

### Negligent Misrepresentation

113.    Plaintiffs repeat and reallege each of the preceding paragraphs, as if fully set forth herein.

114.    Defendants provided the Plaintiffs with false information regarding whether the Industrial Hemp Processing and Purchase Agreements or Toll Processing Agreements for the 2019 grow year would be honored.

115.    Defendants provided the Plaintiffs with false information regarding whether their industrial hemp floral material was being rejected due to unacceptably high levels of pesticides and/or heavy metals.

116.    The information provided was in fact false.

117.    The Defendants failed to exercise reasonable care or competence in obtaining and/or communicating the information regarding whether the contracts would be honored.

118.    The Defendants failed to exercise reasonable care or competence in obtaining and/or communicating the information regarding whether the industrial hemp floral material had unacceptably high levels of pesticides and/or heavy metals.

119.    The Defendants failed to exercise reasonable care or competence in obtaining and/or communicating the information regarding whether the industrial hemp floral material was being rejected due to unacceptably high levels of pesticides and/or heavy metals.

120.    The Defendants intended for Plaintiffs and Class Members to rely on this information and continue to act in accordance with  their Industrial Hemp Processing and Purchase Agreements or Toll Processing Agreements with Bluegrass BioExtracts.

121.    The Plaintiffs and Class Members were justified in their reliance upon the information provided by the Defendants.

122.    Plaintiffs and Class Members did in fact rely on this information to their detriment by continuing to act in conformance with their Industrial Hemp Processing and Purchase Agreements or Toll Processing Agreements with Bluegrass BioExtracts and/or by failing to obtain a different buyer for their industrial hemp floral material.

123.    Plaintiffs and Class Members were injured as a result of the Defendants' negligent misrepresentations and are entitled to compensatory damages, to the extent allowable at law, costs and attorney's fees, as well as any other damages or relief allowable at law.

### FOURTH CLAIM FOR RELIEF

**Violation of the Racketeer Influenced Corrupt**

**Organizations ("RICO") Act §1962(a), (c) & (d)**

124.    Plaintiffs repeat and reallege each of the preceding paragraphs, as if fully set forth herein.

125.    Defendants are each a "person" under 18 U.S.C. §1961(3).

126.    Section 1962(a) makes it "unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity or through collection of an unlawful debt in which such person has participated as a principal within the meaning of Section 2, Title 18, United States Code, to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce." 18 U.S.C. § 1962(a).

127.    Section 1962(c) makes it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. § 1962(c).

128.    Section 1962(d) makes it unlawful for "any person to conspire to violate" §§ 1962(a) and (c), among other provisions. 18 U.S.C. § 1962(d).

129.    The enterprise, the activities of which affected interstate and foreign commerce, was comprised of an association in fact of persons consisting of Bluegrass BioExtracts, DTEC Ventures, Omny Management, Dr. Gerald Edds, and Bruce Peters.

130.    The Defendants functioned to achieve a shared purpose: a scheme to deceive growers regarding their ability to create THC free CBD products and the presence of heavy metals and/or pesticides in their industrial floral hemp material and to misrepresent the intention and/or ability of the Defendants to honor the contracts entered between the growers and the Defendants in order to gain financially, through unlawful means.

131.     Defendants negligently misrepresented or made fraudulent representations regarding their ability to create THC free CBD products, the presence of heavy metals and/or pesticides in growers' industrial floral hemp material, and the Defendants' intentions and/or ability to honor their contracts with the growers.

132.     These deceptive acts were taken with the express intention of getting growers to change their contracts for the Defendants' benefit and otherwise increasing the Defendants' profitability and revenue, thereby causing financial gain to each of the Enterprise's constituents.

133.     Each member of the enterprise was associated with an illegal enterprise, and conspired, conducted, and participated in that enterprise's affairs, through a pattern of racketeering activity consisting of numerous and repeated uses of the interstate mail and wire facilities to execute a scheme to defraud, in violation of 18 U.S.C. §§ 1341 and 1343, all in violation of the RICO Act, 18 U.S.C. §§1962(a), (c)-(d). These acts, committed by interstate wire and through the mails, include: (1) sending and receiving statements that contained the above described deceptive statements; and (2) sending payments to further and guarantee the success of the deceptive acts described in (1).

134.     Each member of the enterprise profited from the enterprise, and Plaintiffs suffered injury to their property because they have incurred substantial expense and are incurring substantial expense in the form of a loss in revenue and value in the processing and sale of their hemp biomass, inability to sell their hemp biomass, or significant delays in selling their hemp biomass. The members of the enterprise used the proceeds from their deceptive acts to further the scheme by, among other things, relaying fraudulent testing results.

135.     The members of the enterprise conspired to deceiving the Plaintiffs.

136.     The enterprise has existed since at least June 2019. It has functioned as a continuing unit and maintains an ascertainable structure separate and distinct from the pattern of

racketeering activity. Each member's participation in the enterprise is necessary for the successful operation of the deceptive marketing scheme and the financial gains that resulted therefrom.

137.     Plaintiffs have sustained injury by reason of the acts and conduct of Defendants alleged in this Complaint.

138.     Plaintiffs were the direct target of Defendants' scheme.

139.     But for the conduct of Defendants alleged herein, Plaintiffs would not have been injured. The injury suffered by Plaintiffs was a foreseeable and natural consequence of the scheme to defraud.

140.     The injuries of Plaintiffs were directly and proximately caused by Defendants' racketeering activity.

141.     As a result, and by reason of the foregoing, Plaintiff has been injured, suffered harm and sustained damage to its business and property, and is therefore entitled to recover actual and treble damages, and its costs of suit, including reasonable attorney fees, pursuant to 18 U.S.C. §1964(c).

142.     In addition, as set forth above, Defendants have violated 18 U.S.C. §§ 1962 (c), and (d), and will continue to do so in the future.

143.     Enjoining Defendants from committing these RICO violations in the future and/or declaring their invalidity and disgorging ill-gotten gains is appropriate pursuant to 18 U.S.C. § 1964(a), which authorizes the district courts to issue appropriate orders to provide equitable relief to civil RICO plaintiffs and enjoin violations of 18 U.S.C. § 1962.

144.     Plaintiffs seeks compensatory damages, disgorgement, equitable relief, injunctive relief, treble damages, and attorneys' fees.

## FIFTH CLAIM FOR RELIEF

### Unjust Enrichment

145.     Plaintiffs repeat and reallege each of the preceding paragraphs, as if fully set forth herein.

146.     The Plaintiff's and Class Members' duty to grow and sell industrial hemp floral material gave value and conferred a benefit that assisted Dr. Gerald G. Edds, Bruce Peters and Omny Management in selling Bluegrass BioExtracts.

147.     The Plaintiff's and Class Members' duty to grow and sell industrial hemp floral material gave value and conferred a benefit that conferred value on Bluegrass BioExtracts which benefited DTEC Ventures upon their purchase of the company.

148.     Omny Management were investors in DTEC Ventures and were promised that they would be appointed as members of Bluegrass BioExtracts if DTEC Ventures was able to purchase Bluegrass BioExtracts.

149.     As described in full and complete detail above and elsewhere in the Complaint, a benefit was conferred upon Defendants DTEC Ventures, Omny Management, Dr. Gerald G. Edds and Bruce Peters at Plaintiff and the Class Members' expense.

150.     As a result, Defendants DTEC Ventures, Omny Management, Dr. Gerald G. Edds and Bruce Peters appreciated a benefit.

151.     Defendants DTEC Ventures, Omny Management, Dr. Gerald G. Edds, and Bruce Peters have inequitably retained that benefit without paying the Plaintiff or Class Members for tis value.

## DEMAND FOR RELIEF

WHEREFORE, Plaintiffs and Class Members demand a jury trial on all counts so triable and judgment against Defendants, jointly and severally, as follows:

a)   An award to each Plaintiff of the maximum allowable damages under such statute(s) or laws, including but not limited to compensatory and punitive damages;

b)   An award of prejudgment interest in the maximum amount allowable by law;

c)   An award to Plaintiffs of their costs and expenses in this litigation and reasonable attorney fees and expert fees and expenses; and,

d)   An award to Plaintiffs of such other and further relief as may be just and proper under the circumstances.

Respectfully submitted,

*/s/ Ronald E. Johnson, Jr.*
Ronald E. Johnson, Jr.
Sarah N. Emery
Hendy Johnson Vaughn Emery, PSC
909 Wright's Summit Pkwy, Suite 210
Ft. Wright, KY 41011
Phone (859) 578-4444
Fax (859) 578-4440
rjohnson@justicestartshere.com
semery@justicestartshere.com

Bryan N. Bishop (KBA 90616)
Bryan N. Bishop Attorney at Law, PLLC
2493 Dixie Highway
Ft. Mitchell, KY 41017
Phone: (859) 331-7900
Fax: (859) 331-7902
bbishop@bryanbishoplaw.com
*Admission to the Western District of*
*Kentucky Pending*