# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
## OWENSBORO DIVISION

|  |  |  |
|---|---|---|
| MICHAEL LOVELL, *et al.* | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | CASE NO.  4:20-CV-59-JRW |
| v. | ) | |
| | ) | CLASS ACTION COMPLAINT |
| BLUEGRASS BIOEXTRACTS, LLC, *et al.* | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' COMPLAINT AGAINST GERALD EDDS AND BRUCE PETERS WITH PREJUDICE FOR FAILURE TO STATE A CLAIM, FAILURE TO PLEAD FRAUD WITH PARTICULARITY AND IMPROPER VENUE

In response to the Complaint filed by Michael Lovell ("Lovell"), Robert Huff ("Huff"), and Harold Murphy ("Murphy"), along with all similarly situated unnamed plaintiffs (collectively "Plaintiffs"), Defendants Dr. Gerald G. Edds ("Edds") and Bruce Peters ("Peters," collectively with Edds, the "Founders"), by their undersigned counsel, submit this Memorandum of Law in support of their *Motion to Dismiss Plaintiffs' Complaint Against Gerald Edds and Bruce Peters with Prejudice* (the "Motion").

## INTRODUCTION

The allegations put forth in the Complaint present nothing but a breach of contract claim between Plaintiffs and the Defendant Bluegrass BioExtracts, LLC ("BBE"). Although Plaintiffs allege they entered a contract with all Defendants [Complaint, Doc. 1 ("Compl.") ¶¶ 4, 98], the contracts themseleves are exclusively between Plaintiffs and BBE. The contracts, on their face, do not benefit the Founders, nor have Plaintiffs alleged that the Founders conferred a benefit from

these contacts.  In connection with these contracts, the Complaint goes on to allege fraud but fails to identify any knowingly false information or specific damages Plaintiffs incurred.  Depite these obvious defecienies, the Complant takes the outlandish leap to allege that Defendants are engaged in illegal activity falling under the prophibition the Racketeer Influenced and Corrupt Organizations Act ("RICO"), codified under 18 U.S.C. §§ 1961–1968.  As put forth in detail herein, Plaintiffs have not submitted any allegations in the Complaint that could plausibly support any claim against the Founders, let alone enough particularity to sufficently plead fraud.  The claims asserted in the Complaint are a simple means to harass the Founders and should be dismissed with prejudice.  Further, Lovell, Huff and Murphy should be held liable for the Founders' legal fees in having to respond to these bad faith claims.

## RESTATEMENT OF UNDISPUTED FACTS

The following statement of facts from the Plaintiffs' Complaint are accepted as true for the sole purpose of this Motion.  In September 2018, the Founders started BBE, a Kentucky limited liability company.  *See* Secretary of State BBE filing, attached as **Exhibit A**.  BBE was a hemp processing company established to capture a burgenoning market of processing hemp into CBD oil [Compl. ¶¶ 4–5, 11–14] after hemp became legalized in late 2018. *See* 7 U.S.C. § 1639o(1) and 21 U.S.C. § 802(16)(B)(i).  In 2019, BBE entered into contracts with Plaintiffs and other growers for their 2019 hemp crop to be processed into CBD oil.  [Compl. ¶ 4.]  In starting their new business, the Founders did the unthinkable – they sent emails from their personal email account, used their personal phones, and even had meetings at their personal residences. [Compl. ¶¶ 16, 27, 28, 29, 37.]  Plaintiffs allegedly entered into written agreements with BBE based on the representations of the Founders (the "Contracts") [ Compl. ¶¶ 11, 14, 54, 78, 80, 81.]  Although Plaintiffs specifically referenced the Contracts in the Complaint, none of the Contracts were attached as exhibits, therefore, the Contracts specifically referenced by Plaintiffs Lovell, Huff and

Muprhy are attached hereto as **Exhibit B, Exhibit C,** and **Exhibit D**, respectively.  From February

2019 to October 2019, the Founders communicated to Plaintiffs regarding these Contracts from

Edds' "personal" roadrunner.com email account.  [Compl.  ¶¶ 27(D)(F), 29(A), 37(A).][1]  In fact,

some of the Contracts themselves referenced this "personal" roadrunner.com account.  *See* **Exhibit**

**B**, Contract signed by Lovell dated July 15, 2019.

The Contracts provided that Plaintiffs, as growers, were to provide hemp to be processed

and that payments would be made by BBE to the growers "when the extracted oil is sold and the

funds are received." [Compl. ¶11.]  As part of the contract negoatiations and discussions about the

growth possibility of their new company, Defendants stated that "four industrial scale

chromatography units to reduce THC and achieve THC free products *would be* operational for

processing the 2019 grow year industrial hemp floral materals." [Compl. ¶ 103] (empasis added);

*see also* Compl. at ¶ 29.]    Additionally, "Defendants Gerald Edds, Bruce Peters, Omny

Management, and/or Bluegrass BioExtracts specifically represented that their 'chromatography

setup will make our products among the most valuable and marketable in the country.'"  [Compl.

¶ 104.] The Founders further represented that certain types of contracts and payment models with

BBE would be more profitable.  [Compl. ¶¶ 106–7.]   The Founders even told Plaintiffs that the

market was speculative and "there were no guarantees." [Compl.¶ 29.]  Plaintiffs allege that the

foregoing statements failed to come to fruition and, therefore, were false.

Plaintiffs further allege that the Founders, after announcing that they were selling their

interests to DTEC Ventures, LLC ("DTEC"), a larger operation that could gain economies of scale,

provided assurances that BBE would honor Plaintiffs' contracts. [Compl. ¶ 45.]  Moreover, the

---

[1] None of these alleged emails were attached to the Complaint.

Purchase Agreement negotiated between DTEC and the Founders provided that BBE would honor the contracual obligations to the Plaintiffs. [Compl. ¶ 55.]

In November 2019, the Founders and other BBE investors sold BBE to DTEC. [Compl. ¶ 53.] Shortly thereafter, as the hemp industry imploded, BBE breached its contract with Plaintiffs and the Founders. [Compl. ¶ 63.] In fact, on January 21, 2020, the Founders filed a lawsuit against BBE and DTEC for, among other things, a breach of contract. *See Gerald E. Edds, in his capacity as trustee v. Bluegrass BioExtracts, LLC, et. al.*, Jefferson County Business Court, Kentucky, Case No. 20-CI-00520 (the "State Court Action"). On January 27, 2020, the Founders indicated to Plaintiffs that DTEC had breached the agreement and that they intended to start a new company and "correct any damage that has been done" by DTEC and BBE. [Compl. ¶ 63.] In discussing the situation with Plaintiffs, Edds told Plaintiffs to contact "specific attorneys" via telephonic and text conversations. [Compl. ¶ 62.] These specific attorneys were not named in the Complaint, but the allegations leaves one wondering if Edds told Plaintiffs to contact the attorneys that were involved in the State Court Action. Scandalous, indeed, but the allegations against the Founders comes to an end and yet there is no alleged pattern of racketeering, actions that allege the use of mail or wires, or any allegations that could pierce the corporate veil making the Founders liable for the actions of BBE. Even more, left in suspense, the Complaint concludes without any description of the damages incurred.

### STANDARD OF REVIEW

On a motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"), a court "must construe the complaint in the light most favorable to plaintiffs" and, "accept all well-pled factual allegations as true." *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (citation omitted). In considering a Rule 12(b)(6) motion, the Court should determine whether the "complaint . . . states

a plausible claim for relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The pleadings include the complaint and any documents attached to it. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000).  Likewise, "[i]n determining whether to grant a Rule 12(b)(6) motion, the court primarily considers the allegations in the complaint, although matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint, also may be taken into account."  *Shaughnessy v. Interpublic Grp. of Cos.*, 506 F. App'x 369, 372 (6th Cir. 2012). (internal citations and quotations omitted). Additionally, "documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [his] claim." *Id.* (*citing Gardner v. United States*, 443 F. App'x 70, 73 (6th Cir. 2011)).

Under the Rule 12(b)(6) standard, Plaintiffs must provide the grounds for its entitlement to relief, which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A plaintiff satisfies this standard only when it "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. A complaint falls short if it pleads facts "merely consistent with a defendant's liability" or if the alleged facts do not "permit the court to infer more than the mere possibility of misconduct." *Id.* at 679. Instead, "a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Id.* at 677 (quoting FED. R. CIV. P. 8(a)(2)). "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting FED. R. CIV. P. 8(a)(2)).

Additionally, Plaintiffs must also satisfy the heightened particularity requirements of Federal Rule of Civil Procedure 9(b) ("Rule 9(b)") with respect to the elements of their claims of fraud. *See, e.g., Jackson v. Segwick Claims Mgmt. Servs.*, 699 F.3d 466, 475 (6th Cir. 2012). "Rule 9(b) states that '[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.'" *Heinrich v. Waiting Angels Adoption Servs., Inc.*, 668 F.3d 393, 403 (6th Cir. 2012) (quoting FED. R. CIV. P. 9(b)). This includes alleging the "time, place, and content" of the fraudulent acts, the existence of a fraudulent scheme, the intent of the participants in the scheme, and "the injury resulting from the fraud." *Id.*

## ARGUMENT

Plaintiffs have purported to assert a private right of action under the federal RICO statute against the Founders without a scintilla of factual support for a predicate act, let alone facts that would support a pattern of racketeering. Additionally, Plaintiffs asserted four similarly defficent claims against the Founders, including 1) breach of contract, 2) fraud, 3) negligent misrepresentation, and 5) unjust enrichment. Read in full, the Complaint pieces together inconsequential allegations that fail to provide the foundation necessary to plead one plausible claim against the Founders. By their own accounts, as put forth in the Complaint, the Plaintiffs could not plausibly show that the Plaintiffs had a contract with the Founders, received false information from the Founders, or conferred a benefit to the Founders. The claims asserted against the Founders should be dismissed summarily, with prjeudice, and with costs to the Founders in having to respond to these bad faith claims.

At the heart of this Complaint is a run of the mill business dispute between Plaintiffs and BBE. The claims – as admitted and pleaded by Plaintiffs – could not plausibly support a claim against the Founders. The Founders, along with others, started BBE and negotiated with Plaintiffs in procurring hemp to process. As a result, and as supported by the actual language of the

Contracts, BBE entered into a contract with Plaintiffs – not the Founders.  Moreover, Plaintiffs concede that the Founders sold BBE prior the occurance of any breach of contract.  Plaintiffs' breach of contract claim against the Founders cannot be sustained.

The Complaint puts forth specific alleged statements that the Founders made as employees and members of BBE.  These identified statements disscus the potential growth of BBE, BBE's future processing capacity, and BBE's obligations post-sale, but there was not one statement that idenfied information that was false – even if these promises of future action did not occur.  Plaintiffs, therefore, cannot support a fraud or negligent misrepresentation claim against the Founders.  Similarly, Plaintiffs' unjust enrichment claim against the Founders fails because the Founders received no benefit from the Plaintiffs.  Indeed, the Complaint makes no assertion that Plaintiffs delievered hemp to BBE, much less that Defendants retained or processed the hemp.  Therefore, Plaintiffs have not plausibly pleaded an unjust enrichment claim.

Despite the above deficiencies, Plaintiffs' assertions of a RICO claim by far lack the most merit, and the Court should consider the claims asserted as bad faith claims intended purely as a means to harass the Founders.  Even if Plaintiffs could prove that the Founders emailed them fraudulent statements – which they cannot – statements over the course of eight months regarding a single alleged breached business transaction cannot constitute a "pattern of racketeering," even under a liberal pleading standard.  The logical extension of Plaintiffs' claim would lead to the absurd result where every breach of contract claim with email correspondence would transform into a RICO violation.  Because this is not the law and Plaintiffs have woefully failed to plead a claim for relief, all counts asserted against Founders should be dismissed with prejudice.

I.  **PLAINTIFFS FAIL TO PLEAD SUFFICENT ALLEGATIONS THAT WOULD SUPPORT ANY CLAIMS ASSERTED AGAINST THE FOUNDERS**

Congress passed RICO in 1970 to address the concern of organized crime. *See, e.g., United States v. Rone*, 598 F.2d 564 (9th Cir. 1979), *cert. denied*, 445 U.S. 946 (1980).  Although the case law now makes clear that RICO extends beyond the typical mobster, the statute expressly covers only four types of activities: (i) investing in an enterprise where any income derived from a pattern of racketeering activity; (ii) using a pattern of racketeering activity to acquire or maintain control over an enterprise; (iii) conducting the affairs of an enterprise through a pattern of racketeering; and (iv) conspiring to violate the (i)-(iii). §§ 1962(a), (b), or (c). *See* 18 U.S.C.A. § 1962(a)-(d). Each of the activities covered by RICO have the common element of "a pattern of racketeering activity" which Congress defined in Section 1961(5) as requiring at least two acts of racketeering activity within a ten year period.  *Id.* 18 U.S.C.A. § 1961(5).

In order properly to allege a RICO claim, Plaintiffs must show "'(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.'" *Heinrich*, 668 F.3d at 404. "A plaintiff must allege each element" in order "to properly state a claim" upon which relief may be granted. *Id.*  In addition, a plaintiff must show injury to his or her business or property. *See Jackson v. Sedgwick Claims Mgmt. Servs., Inc.*, 731 F.3d 556, 562 (6th Cir. 2013) (en banc).  As explained below, Plaintiffs have woefully failed to meet even a single element of a RICO claim.  And because each element must be sufficiently pleaded, Plaintiffs cannot maintain their action against the Founders and the RICO claim should be dismissed.

A.  **Plaintiffs Have Not Established Conduct of Racketeering Activity**

As an initial matter, and among the claim's fatal flaws, a RICO claim must be based on actual racketeering activity. 18 U.S.C.A. § 1961(5). "Racketeering activity" was also defined by Congress to include a host of state and federal predicate crimes.  *Id.* at § 1961(1).  Here also, courts

have been clear that RICO applies only to organized long-term criminal activity, not ordinary business disputes, and certainly not a single business transaction. *See, e.g., Moon v. Harrison Piping Supply*, 465 F.3d 719 (6th Cir. 2006) (even if the racketeering activity lasted for two-and-a-half years, as [plaintiff] insists, facts establishing a closed period of continuity are still lacking" because "[a]ll of the predicate acts . . . were keyed to Defendants' single objective of depriving [plaintiff] of his benefits" and "[n]o other schemes, purposes, or injuries are alleged."); *Midwest Grinding Co. v. Spitz*, 976 F.2d 1016, 1025–1026 (7th Cir. 1992) ("RICO has not federalized every state common-law cause of action available to remedy business deals gone sour."); *Calcasieu Marine Nat. Bank v. Grant*, 943 F.2d 1453, 1463 (5th Cir. 1991) ("although Congress wrote RICO in broad, sweeping terms, it did not intend to extend RICO to every fraudulent commercial transaction"), *McDonald v. Schencker*, 18 F.3d 491, 499 (7th Cir. 1994); *Midwest Grinding*, 976 F.2d at 1025 ("civil RICO plaintiffs persist in trying to fit a square peg in a round hole by squeezing garden-variety business disputes into civil RICO actions"); *Limestone Dev. Corp. v. Vill. of Lemont*, 520 F.3d 797, 803 (7th Cir. 2008) (affirming dismissal of RICO claim and warning against permitting a plaintiff "with a largely groundless claim to simply take up the time of a number of other people, with the right to do so representing an in terrorem increment of the settlement value, rather than a reasonably founded hope that the [discovery] process will reveal relevant evidence"). Further, courts have been clear that conduct that amounts to garden-variety state-law crimes, torts, and contract breaches does not qualify as "racketeering activity" under RICO. *See, e.g., Doug Grant, Inc. v. Greate Bay Casino Corp.*, 232 F.3d 173 (3d Cir. 2000).

Here, Plaintiffs have absurdly accused Defendants of committing the federal crimes of mail fraud (18 U.S.C.A. § 1341) and wire fraud (18 U.S.C.A. § 1343) as the statutory basis for their RICO claim. The Sixth Circuit identified the elements of mail and wire fraud as (1) a scheme or

artifice to defraud; (2) use of interstate mail or wire communications in furtherance of the scheme; and (3) intent to deprive a victim of money or property. *See United States v. Prince*, 214 F.3d 740, 747-48 (6th Cir. 2000). "A scheme to defraud includes any plan or course of action by which someone uses false, deceptive, or fraudulent pretenses, representations, or promises to deprive someone else of money." *United States v. Jamieson*, 427 F.3d 394, 402 (6th Cir. 2005).

A plaintiff alleging wire fraud must also demonstrate scienter—that is, a showing that the defendant acted either with a specific intent to defraud or with recklessness with respect to potentially misleading information. *United States v. DeSantis,* 134 F.3d 760, 764 (6th Cir. 1998). Further, "[w]hen pleading predicate acts of mail or wire fraud, in order to satisfy the heightened pleading requirements of Rule 9(b), a plaintiff must '(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why such statements were fraudulent.'" *Heinrich*, 668 F.3d at 404 (citing *Frank v. Dana Corp.*, 547 F.3d 564, 570 (6th Cir. 2008)).

In this matter, Plaintiffs only make the assertion that the predicate act of mail fraud and wire fraud existed, but fail to sufficiently identify any paticular act of mail and wire fraud. [Compl. ¶¶ 124–144.] To the extent that Plaintiffs intended the emails sent by Edds to meet the requirements of mail or wire fraud, Plaintiffs have not established that these statements were interstate communications[2], that the declarant intended to defaud, or anything beyond a suggestion that these statements were fraudulent. Plaintiffs simply fail to plead the predicate act of wire fraud with the particularity demanded by Rule 9(b).

---

[2] Plaintiffs are Kentucky residents, Defendant BBE was a Kentucky limited liability company, and the Founders are Kentucky residents. [Compl. ¶¶ 80–90, 93, 94.] There are no allegations that any non-Kentucky resident received these communications.

But even if this Court was satisfied that enough allegations existed to sufficently plead mail or wire fraud, the Sixth Circuit has made clear that predicate acts alone do not sustain a pleading of RICO, "because § 1961(5) assumes that there is something to a RICO pattern *beyond* the number of predicate acts involved." *Moon*, 465 F.3d at 724 (6th Cir. 2006) (citing *H. J., Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 238 (1989) (internal citations ommitted) (emphasis original).   In *Moon*, the Court found that the alleged five mailings that spanned the course of July 2003 to April 2004 did nothing more than allegedly send false information and the emails were not adquate to plead a pattern of racketeting activity.  *Id.* at 724–26.  Similarly, here, Plaintiffs only allege the Founders sent several emails over the course of eight months relaying false information.  There is no allegation of a pattern of racketering activity beyond the predicate act. This deficiency renders Plaintiffs' RICO claim inadequate. *See Heinrich*, 668 F.3d at 405 ("A plaintiff must show 'some direct relation between the injury asserted and the injurious conduct alleged.'") (citing *Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258, 268, 112 S. Ct. 1311, 117 L. Ed. 2d 532 (1992); *see also Griffin v. Jones*, No. 5:12-CV-00163, 2014 U.S. Dist. LEXIS 136831, at *13–14 (W.D. Ky. Sep. 29, 2014).  The Complaint fails to plead or even suggest anything but a few emails that contained false information, which is simply not racketerring activity.

### B.    Plaintiffs Have Not Established a Pattern of Racketeering Activity

A pattern of racketeering activity requires, at minimum, two acts of racketeering activity within ten years of each other. 18 U.S.C. § 1961. The Supreme Court and this Circuit further require that "[i]n order to show a 'pattern' of racketeering activity, a plaintiff must show 'that the racketeering predicates are related, and that they amount to or pose a threat of continued criminal activity.'" *Heinrich*, 668 F.3d at 409 (quoting *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 237–39 (1989)).  This requirement is referred to as the "relationship plus continuity" test. *Id.*; s*ee also, Brown v. Cassens Transp. Co.*, 546 F.3d 347, 355 (6th Cir. 2008).  The "relationship" prong is

satisfied by showing that the predicate acts have "similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." *Heinrich*, 668 F.3d at 409 (quoting *H.J. Inc.*, 492 U.S. at 240). The "continuity" prong can be satisfied by showing either a "close-ended" or an "open-ended" pattern. *Id.*; *see Moon*, 465 F.3d at 724 ("Continuity may be established at the pleading stage by alleging facts of either closed- or open-ended racketeering activity."). A close-ended pattern refers to a series of related predicate acts extending over a substantial period of time, whereas an open-ended pattern refers to a set of predicate acts that poses a threat of continuing criminal conduct extending beyond the period in which the predicate acts were performed. *Heinrich*, 668 F.3d at 409–10 (citing *H.J. Inc.*, 492 U.S. at 241–42). Courts have consistently held that a short-term episode of "racketeering" does not qualify as "a pattern of racketeering activity," but racketeering activity under the statute means long-term, organized conduct. *See Agency Holding Corp. v. Malley-Duff & Assoc., Inc.*, 483 U.S. 143, 154 (1987); *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 488–493 (1985); *Corley v. Rosewood Care Ctr., Inc.*, 388 F.3d 990, 1004 (7th Cir. 2004).

Here, even taking Plaintiffs' allegations as true and drawing all reasonable inferences in their favor, their RICO claim fails to present facts that could ever show a pattern of racketeering. The Complaint admits that the alleged scheme lasted, at best, eight months. Moreover, despite resuscitating that the "racketing activity" has the ability to be repeated, Plaintiffs make no connection how this claim is plausible. Thus, the racketeering activity Plaintiffs allege is insufficient to state a viable RICO claim and does not, by its nature, threaten repetition. As such, Plaintiffs have failed to adequately plead a pattern of racketeering activity in support of their RICO claim against the Founders.

**C.      Plaintiffs Failed to Plead the Other Required Elements of a RICO Claim**

Even if Plaintiffs sufficiently alleged a pattern of racketeering activity, Plaintiffs' claims would still fail to meet the requirements under Rule 9(b).  Because the deficiencies put forth above alone support the Founders' Motion, the Complaint's additional defects are only briefly summarized below.

First, Plaintiffs have failed to meet their pleading requirements by not specifying an "injury resulting from the fraud." *Heinrich.*, 668 F.3d at 403.  There is not one specific injury alleged in the entire Complaint.  Moreover, even if Plaintiffs alleged that they have some injury that arose directly from a predicate act, they are still required to show that the injury resulted from "racketeering activity."  *Id.*  To allege a valid RICO claim, a plaintiff must show not only that the predicate act was a "but for" cause of his injuries, but also a proximate cause. *Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258, 268 (1992).  Plaintiffs must demonstrate "some direct relation between the injury asserted and the injurious conduct alleged." *Id.*  Although Plaintiffs allege misstatements of facts were presented in several emails, Plaintiffs fail to adequately allege that these statements caused Plaintiffs' alleged damages.

Additionally, Plaintiffs seemingly bring the Founders into its RICO claim because they are part of an alleged conspiracy to violate RICO.  [Compl. ¶ 133.]  In order to plead a conspiracy, Plaintiffs must allege all the elements of a RICO action plus one additional element: "an illicit agreement to violate the substantive RICO provision." *Am. BioCare Inc. v. Howard & Howard Attys. PLLC*, 702 F. App'x 416, 423 (6th Cir. 2017) (citing *Grubbs v. Sheakley Grp., Inc.*, 807 F.3d 785, 806 (6th Cir. 2015) (quoting *Heinrich*, 668 F.3d at 411) (internal quotation mark omitted)).  Plaintiffs completely fail to allege an agreement to conspire, let alone one that would show there was an agreement to violate RICO.

## II.    PLAINTIFFS' ADDITIONAL COUNTS AGAINST FOUNDERS FAIL TO STATE A CLAIM FOR RELIEF

Jurisdiction in this Court is only available through 18 U.S.C.A. § 1864(c), because both Plaintiffs and Founders are Kentucky residents.  [Compl. ¶¶ 80-90, 93, 94.]  Therefore, to the extent that the Court dismisses the RICO claim, this Court lacks jurisdiction to hear Plaintiffs' other arguments asserted against the Founders.  However, these claims also fail and merit dismissal.  Moreover, these unfounded claims weigh in support of a finding that the claims were brought in bad faith and the Complaint should be dismissed with prejudice against the Founders.

### A.    Founders Were Not Party to a Contract with Plaintiffs and the Complaint's Breach of Contract Claims Should be Dismissed with Prejudice Against Founders

Plaintiffs allege that all Defendants, including the Founders, breached their contracts with Plaintiffs.  Plaintiffs descibed these Contracts in detail [Compl. ¶¶ 5, 11, 12, 38], yet conviently failed to attach a copy of the Contracts.  However, because the Contracts are referrenced in the Complaint and are central to Plaintiffs' claims, they may be considered in this Motion. *See, e.g., Shaughnessy*, 506 F. App'x at 372.  A simple reading of the Contracts, attached hereto, as Exhibit B, C an D, show that each contract was exclusively between Plaintiffs and BBE, and the Founders were not parties.  Although the Founders may have signed on behalf of BBE, Kentucky law is abundantly clear, signing on behalf of BBE did not make the Founders party to the Contract, or liable for the Contract.  In fact, the law and the facts are so clear that Plaintiffs should be held liable for bringing a bad faith claim against the Founders.

### 1.    Kentucky law protects members and agents from personal liability for contracts executed on behalf of the LLC.

Under Kentucky law, breach of contract requires showing (1) the existence of a contract, (2) breach of that contract, and (3) damages flowing from the breach. *Metro Louisville/Jefferson County Government v. Abma*, 326 S.W.3d 1, 8 (Ky. Ct. App. 2009).  Here, there is no contract

between Plaintiffs and the Founders.   This Court has consistently confirmed the basic and fundmantal element of contract law that "[a] contract is only binding upon the parties to a contract." *See, e.g., Sudamax Industria e Comercio de Cigarros, Ltda v. Buttes & Ashes, Inc.*, 516 F. Supp. 2d 841, 845 (W.D. Ky. 2007). As the Court further noted in *Sudamax*, "Kentucky law insulates agents from liability for acts done within the scope of [their] agency on behalf of a disclosed principal." *Id.* (quoting *Summit Petroleum Corp. of Ind. v. Ingersoll-Rand Fin. Corp.*, 909 F.2d 862, 868 (6th Cir.1990)). Similarly, and pertinent to the matter at hand,  the Kentucky Limited Liability Act provides, in relevant part:

> [N]o member, manager, employee, or agent of a limited liability company, including a professional limited liability company, shall be personally liable by reason of being a member, manager, employee, or agent of the limited liability company, under a judgment, decree, or order of a court, agency, or tribunal of any type, or in any other manner, in this or any other state, or on any other basis, for a debt, obligation, or liability of the limited liability company, whether arising in contract, tort, or otherwise.

KRS 275.150(1).

Here, Plaintiffs are attempting to hold the Founders, in the capacity as former managers and agents of BBE, liable for BBE's alleged breach of contract, a contract to which the Founders were not party.  *See* Exhibit B, C, and D.  Indeed, Plaintiffs' failure to attach the Contracts misleads this Court to assume that the Founders were parties to the Contracts, which are simply not the facts in the case at hand.  Because BBE is the only party to the contract, BBE is the only party that can be held liable for the contract. *See Sudamax*, 516 F. Supp. 2d at 845.  Plaintiffs  did not allege facts sufficient to hold the Founders liable to the Contracts of BBE.  In fact, Plaintiffs admit that the Founders sold the company prior to the alleged breach of contract and that the terms of the Purchase Agreement provided that BBE remain liable on the contracts.  [Compl.  ¶ 55.]

2.      **Plaintiffs cannot prevail on a veil piercing argument against the Founders under Kentucky law.**

Furthermore, to the extent Plaintiffs seek to "pierce the corporate veil" of BBE to assert claims against Founders, this argument too fails.  Piercing the corporate veil is an equitable doctrine invoked by courts to allow a creditor recourse against the shareholders of a corporation. *Inter-Tel Technologies, Inc. v. Linn Station Properties, LLC*, 360 S.W.3d 152, 155 (Ky. 2012). The party seeking to pierce the corporate veil bears the burden of proof. *Tavadia v. Mitchell*, 564 S.W.3d 322, 328 (Ky. App. 2018).  This is a heavy burden, and courts should disturb the legal fiction of corporate separateness only in the rarest of circumstances. *Schultz v. General Elec. Healthcare Financial Services Inc.*, 360 S.W.3d 171, 174 (Ky. 2012).

Piercing the corporate veil is "the judicial act of imposing personal liability on otherwise immune corporate officers, directors, and shareholders for the corporation's wrongful acts….." *Killian v. Tunacakes Props.*, No. 2010-CA-001396-MR, 2012 Ky. App. LEXIS 8, at *10 (Ct. App. Jan. 20, 2012) (citing *Daniels v. CDB Bell, LLC*, 300 S.W.3d 204, 210 (Ky. App. 2009) (quoting 18 C.J.S. Corporations § 14 (2008)). "The decision as to whether to pierce the corporate veil is an equitable one to be decided by the trial court and not the jury." *Id.* (internal citaitons ommitted). In Kentucky, the corporate veil may be pierced when two dispositive elements are proven: "(1) domination of the corporation resulting in a loss of corporate separateness and (2) circumstances under which continued recognition of the corporation would sanction fraud or promote injustice." *Inter-Tel Technologies, Inc.*, 360 S.W.3d at 165. *See also Howell Contractors, Inc. v. Berling*, 383 S.W.3d 465, 469 (Ky. App. 2012).  Although evidence of actual fraud is not required to meet this element, "the injustice must be something beyond the mere inability to collect a debt from the corporation." *Id.*

The facts submitted in the Complaint, accepted as true for the purposes of this Motion, cannot support piercing the corporate veil of BBE, paticularly against the Founders.  First, the only alleged fact to support Plaintiffs' claim of a loss of "corporate seperateness" is that the Founders used a personal email and phone number as well as a home office to conduct business.  There is absolutely no Kentucky law requiring limited liabiliy companies to have coporate email accounts or offices, or that members subject themselves to personal liability by using personal emails, phones or residences to conduct business.  Such a finding would have significant consequenses and expenses to small businesses across the Commonwealth, forcing every lawncare company, hairdresser, cleaning service, and handyman to obtain corporate offices, corporate emails, and separate phone numbers from their "personal" numbers.[3]

Moreover, Plaintiffs allege, consistent with public records, that the Founders sold BBE. [Compl. ¶ 53.]  The Founders sold BBE before the alleged breach of contract occurred.  Therefore, it is not even plausible that the Founders could be personally liable under a veil piercing argument.  Accordingly, Plaintiffs have failed to assert a plausible breach of contract claim against Founders and the Court should dismiss this claim with prejudice.

## B.   Plaintiffs' Fraud and Negligent Misrepresentation Claims Should Be Dismissed With Prejudice Against Founders

Plaintiffs' fraud claims fail similar to its other claims.  Plaintiffs allege that the Founders made fraudulent statements about the future performance of BBE in order to induce Plaintiffs to enter into a contract with BBE.  [Compl. ¶¶ 2, 17, 18, 21, 131.][4]  First, Plaintiffs fail to adquately

---

[3] In fact, the idiocy of this argument can be played out even further in the wake of the current COVID-19 pandemic where every company has been asked, if at possible, to stay home and operate.  Did this pandemic just open every Kentucky employee working from home to personal liability?

[4] Similar to the Contracts, Plaintiffs fail to attach any emails or communications where they allege a fraudulent statement existed.  Plaintiffs have not yet identified these communications; however, Plaintiffs reserve the ability to supplement the record with these specifically identified communications.

plead fraud under Rule 9(b).  Moreover, even if the claims were sufficently descibed, Plaintiffs cannot maintain a fraud claim against the Founders because they made promises of the future performance of the BBE.  As put forth below, Kentucky courts have consistently found these statements are nothing more than puffery and cannot maintain a claim of fraud.

"Fraudulent inducement attends conduct prior to striking the express or implied contract and alleges that one party tricked the other into contracting. It is based on pre-contractual conduct which is, under the law, a recognized tort." *Lillard v. Univ. of Louisville*, 2012 U.S. Dist. LEXIS 166130, 2012 WL 5878715, at *4 (W.D. Ky. Nov. 21, 2012) (quoting *Becherer v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 193 F.3d 415, 439 (6th Cir. 1999)) (internal ciations ommitted).  Under Kentucky law, a fraud claim requires that a plaintiff establish six elements by clear and convincing evidence: (1) a material misrepresentation, (2) which is false, (3) known to be false or made recklessly, (4) made with inducement to be acted upon, (5) acted in reliance thereon, and (6) causing injury.  *United Parcel Serv. Co. v. Rickert*, 996 S.W.2d 464, 468 (Ky. 1999) (citing *Wahba v. Don Corlett Motors, Inc.*, 573 S.W.2d 357, 359 (Ky. Ct. App. 1978)).

In a claim for fraudulent misrepresentation, Kentucky courts have long held that, "fraud cannot be predicated upon statements which are promissory in their nature when made and which relate to future actions or conduct, upon mere failure to perform a promise—nonperformance of a contractual obligation—or upon failure to fulfill an agreement to do something at a future time or to make good subsequent conditions which have been assured. Such nonperformance alone has frequently been held not even to constitute evidence of fraud." *Derby City Capital, LLC v. Trinity HR Servs.*, 949 F. Supp. 2d 712, 726 (W.D. Ky. 2013) (citing *Mario's Pizzeria, Inc. v. Fed. Sign & Signal Corp.,* 379 S.W.2d 736, 740 (Ky. 1964) (quoting 24 Am. Jur. *Fraud and Deceit* § 267); *C.A.F. & Assoc., LLC v. Portage, Inc.,* 913 F. Supp. 2d 333, 2012 U.S. Dist. LEXIS 179144,

2012 WL 6624733, at *17 (W.D. Ky. Dec. 19, 2012); *Reece v. Blevins,* 2003 Ky. App. Unpub. LEXIS 204, 2003 WL 1251447, at *5 (Ky. Ct. App. Feb. 7, 2003)).  And while a statement as to future conduct may form the basis for a misrepresentation claim if made with the intent to induce the other party to enter into a contract, Plaintiffs must show that the Founders never intended to make that future conduct.  *Davis v. Siemens Med. Solutions, USA, Inc.,* 399 F. Supp. 2d 785, 800 (W.D. Ky. 2005).

The Kentucky Supreme Court adopted § 552 of the Restatement (Second) of Torts as the law for pleading a negligent misrepresentation claim in Kentucky. *Presnell Construction Managers, Inc. v. EH Construction, LLC*, 134 S.W.3d 575, 582 (Ky. 2004). The Restatement provision *Presnell* adopted provides, in relevant part, a claim for negligent misrepresentation occurs when:

> in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

Restatement (Second) of Torts § 552(1).

The Supreme Court of Kentucky in *Giddings & Lewis, Inc. v. Indus. Risk Insurers*, 348 S.W.3d 729 (Ky. 2011) has emphasized that the tort of negligent misrepresentation "requires an affirmative false statement; a mere omission will not do." *Id.* at 746 (quoting *Republic Bank & Trust Co. v. Bear, Stearns & Co.*, Inc., 707 F. Supp. 2d 702, 714 (W.D. Ky. 2010)); *see also Estate of Demoss v. Eli Lilly & Co.*, 234 F. Supp. 3d 873, 883 (W.D. Ky. 2017).

Both fraud and negligent misrepresentation claims must meet the pleading standards of Rule 9(b). *See, e.g., Republic Bank & Trust Co. v. Bear Stearns & Co., Inc.*, 683 F.3d 239, 247-248 (6th Cir. 2012).  In accordance with Rule 9(b)'s heightened pleading requirements, this Court has held that "[w]hile it is not necessary to 'recite each minute detail, a plaintiff is required to plead

the time, the place, the substance of the false representations, the facts misrepresented, and the identification of what was obtained by the fraud." *Miller v. Reminger Co.,* 2012 U.S. Dist. LEXIS 78620, 2012 WL 2050239, at *7 (W.D. Ky. June 6, 2012) (quoting *Scott v. Farmers State Bank,* 410 S.W. 2d 717, 722 (Ky. 1966)) (internal quotations omitted); *see also United States ex rel. Bledsoe v. Cmty. Health Sys., Inc.,* 342 F.3d 634, 643 (6th Cir. 2003) ("In complying with Rule 9(b), a plaintiff, at a minimum, must allege the time, place, and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud.").

Here, in support of the fraud and negligent misrepresentation claims, Plaintiffs allege that the Founders told them that *would have* four industrial scale chromatography units operational for the 2019 grow year. [Compl. ¶¶ 29, 103.] Additionally, Plaintiffs allege the Founders said that BBE's chromatography setup "will make our products among the most valuable and marketable in the country." [Compl. ¶¶ 106–7.] However, all of these were statements of future promises. Plaintiffs even capitulate that the Founders told them that the market was speculative and "there were no guarantees." [Compl. ¶ 29.] Moreover, Plaintiffs do not assert that the Founders or BBE never intended to have four operational machines. Additionally, there are no allegations to suggest that this was an impossible task, so much so that Plaintiffs could have never believed such a statement was true.

Simply put, the Founders did not provide false information to Plaintiffs, and Plaintiffs do not allege such. Plaintiffs have failed to plead allegations sufficient to meet the heightened "clear and convincing" standard for fraud claims. *See, e.g., Hardin v. Savageau,* 906 S.W.2d 356, 42 10 Ky. L. Summary 31 (Ky. 1995). Plaintiffs have also failed to plead a material misrepresentation

sufficient to satisfy the heightened pleading standard of Rule 9(b). *Derby City Capital*, 949 F. Supp. 2d at 727–28.

### C. Plaintiffs' Unjust Enrichment Claim Should Be Dismissed With Prejudice Against Founders

In Kentucky, to prevail under a theory of unjust enrichment, the claimant must prove three elements: (1) benefits conferred upon defendant at plaintiff's expense, (2) a resulting appreciation of benefit by defendants, and (3) inequitable retention of benefit without payment for its value. *See Guerin v. Fulkerson*, 354 S.W.3d 161, 165 (Ky. App. 2011). "A person is not unjustly enriched unless 'the retention of the benefit would be unjust.'" *Guarantee Electric Co. v. Big Rivers Electric Corp.*, 669 F.Supp. 1371, 1380 (W.D. Ky. 1987). The most important of the elements is that the enrichment to the defendant must be unjust. *Id.*

There are no allegations that the Founders siphoned money or assets out of BBE or committed any other sort of act that would constitute unjust enrichment. Further, there is no assertion that Plaintiffs delivered hemp to the Defendants to be processed or that Founders have retained anything from Plaintiffs. Indeed, Plaintiffs have failed to plead one alleged fact that would meet an element of unjust enrichment. Plaintiffs have simply recited the elements of unjust enrichment in the Complaint and nothing more [Compl. ¶¶ 145–51] that would allow the Court to draw a reasonable inference that the Founders received any benefit from Plaintiffs. *Iqbal*, 556 U.S. at 678. Moreover, Plaintiffs are attempting to impose personal liability on the Founders for unjust enrichment through its corporate veil peircing theory, which as dicussed above, fails to meet even a plausbility standard.

### CONCLUSION

For the reasons stated above, the Founders respectfully request this Court dismiss all counts in the Complaint asserted against the Founders.

Respectfully submitted,

*/s/ April A. Wimberg*
April A. Wimberg (KBA # 95741)
Aaron W. Marcus (KB1 #96178)
DENTONS BINGHAM GREENEBAUM LLP
3500 PNC Tower
101 South Fifth Street
Louisville, Kentucky  40202
(502) 587-3719
(502) 540-2135
Email:  april.wimberg@dentons.com
        aaron.marcus@dentons.com

*Counsel for Dr. Gerald G. Edds and Bruce Peters*

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that on May 22, 2020, I electronically filed the foregoing document with the Clerk of the Court by using the CM/ECF system, which shall send notification of such filing to counsel of record and U.S. Postal service to:

BLUEGRASS BIOEXTRACTS, LLC
Serve: Registered Agent
Cynthia Sheriff
931-A Wing Avenue
Owensboro, Kentucky  42303

DTEC VENTURES, LLC
Serve via Kentucky Secretary of State:
Northwest Registered Agent, LLC
401 Ryland Street, Suite 200-A
Reno, Nevada  89502

*/s/ April A. Wimberg*
April A. Wimberg (KBA # 95741)
*Counsel for Dr. Gerald G. Edds and Bruce Peters*